This is case number 411836, Board of Trustees of the University of Illinois v. Illinois Educational Labor Relations Board for the appellant, Mr. Powers. For the appellee, Ms. Angelucci and Ms. Purcell. Can you split your time? Thank you. You may proceed. Thank you. May it please the Court, my name is Jim Powers and I am an attorney representing the Petitioner Board of Trustees of the University of Illinois. This appeal concerns the issue of whether the Respondent Illinois Educational Labor Relations Board properly certified the Respondent Union as the exclusive bargaining representative of a mixed unit of tenured and non-tenured faculty at the University of Chicago campus. The first issue for your consideration is whether the Respondent Board properly interpreted the last paragraph of Section 7A of the Illinois Educational Labor Relations Act as permitting the inclusion of non-tenured faculty in the sole appropriate unit for tenured faculty. The Court should apply a de novo standard of review for this particular issue in light of the fact that it is predominantly one of statutory interpretation. The Board's interpretation is owed no deference for two reasons. Number one, this is a matter of first impression for the Educational Labor Relations Board. This is not a situation where the Board has had a long history and practice of interpreting this particular section and having it subject to appellate challenge or appellate review. Second, the language of the last paragraph of Section 7A is clear and unambiguous. As this Court has noted, an agency is owed no deference when interpreting a statute whose language is clear and unambiguous. The second issue for consideration is whether the Educational Labor Relations Board properly certified a tenured and non-tenured faculty unit as appropriate under a traditional community of interest analysis. This Court should apply a clearly erroneous standard of review to that question because it is a mixed issue of fact and law. The University maintains, however, that this Court does not even need to reach this second issue unless it first agrees with or accepts the Board's interpretation of the last paragraph of Section 7A. The University maintains that the Board did not correctly interpret that last paragraph of Section 7A. That Section 7A prohibits the mixture of non-tenured with tenured faculty in the same unit. In analyzing the meaning of the last paragraph of Section 7A, there are three critical phrases or terms that should be considered. The first term that should be considered is the subject of the first sentence, sole appropriate unit. The second important phrase or term that needs to be considered is the connecting term includes, which obviously the parties have their major disagreement about. The third phrase or term that needs to be taken into consideration is the phrase tenure and tenure track. That phrase appears both before the term includes and it falls after the term includes. It is the University's position that when these three phrases are read in context, the legislature's clear intent was that the sole appropriate, the only unit, sole meaning only according to the plain dictionary term, the sole or only unit for tenure track or tenure system faculty is one that is limited to, that only includes tenure system faculty. The Board's interpretation is based on an expansive meaning of the term includes. According to the Board, the term includes typically introduces a list or a subset of items that belong to a more generalized subject matter. For several reasons, this interpretation makes no sense in the context of the last paragraph of Section 7A. First and foremost, when you read that first sentence of Section 7A, there is no list, there is no itemization that follows the term includes. The only thing that follows the term includes is the phrase tenure and tenure track. That very same phrase appears before the term includes as well in describing what the sole appropriate unit is. The structure of Section 7A doesn't lend itself to interpreting it as providing a description to the reader of the types of things that should belong to the sole appropriate unit. The Board's interpretation would have made more sense if, for example, there was an itemized list following the term includes. For example, if the term includes, for example, non-tenured faculty, paraprofessionals, maintenance, clerical, then the Board's interpretation might make more sense. Alternatively, the Board's interpretation may have made more sense if the subject of the sentence wasn't so limited and discreet. In other words, rather than saying the sole appropriate unit, their interpretation would have made more sense if it had started off by saying an appropriate unit, more generalized. Then it would have lent itself to more of an interpretation of here is a descriptive list of things that belong to a very generalized category. Section 7A, though, does not have those words or that meaning. The University would submit that the Board's and the Union's interpretation also doesn't make any sense. When one considers the Union's interpretation that includes, has such an expansive meaning, that any employee group could belong to the sole appropriate unit. The Union had actually made that reference in an earlier submission, earlier in this proceeding at the Educational Labor Relations Board level, ALJ Exhibit 6, if you want to refer back to the record. The reason why that doesn't make any sense is the following. If any particular employee group, clerical, maintenance, non-tenured, could actually belong to the sole appropriate unit, the University submits that it basically nullifies and reads the word sole appropriate unit out of the statute. Why then would the General Assembly have gone to the trouble of retaining that phrase when they went about amending Section 7A? The easiest way, if they wanted anybody in every employee group to belong to that unit, would have been just to delete that last paragraph of Section 7A. The case law that the Board cites, both in its decision and in its brief, in support of this expansive interpretation of the word includes, University submits is distinguishable. The cases that the Board cites in their brief and in their decision, either involve an itemized list of things that could belong to a generalized antecedent, or it involved a very limited antecedent. Those cases are distinguishable. We also cited cases in our brief standing for the proposition that the term includes can indeed have a limited interpretation in the right context. The University submits that this is just that right context. The University would also submit that there is another defect in the Board's interpretation of the last paragraph of Section 7A. Assuming for the sake of argument that the word includes does have an expansive meaning, that allows or permits other types of groups to belong to that unit, one would then assume that the pre-2003 version of the last paragraph of Section 7A should have the same expansive meaning because the key terms were in existence both in the prior version as well as the post-2003 version, sole appropriate unit and includes. One would assume then that if the Board's interpretation is right, the pre-2003 version should have also had an expansive meaning, meaning that non-tenured may or may not have been included or could or could not have been included and other employee groups were permitted to be included or not permitted to be included. Yet both the Board and the Union in their briefs have suggested, Board brief at page 29, Union brief at page 19, they have both suggested that the pre-2003 version of the statute had a limited or restrictive meaning. The University would submit that you can't have it both ways. It's either the pre-2003 and the post-2003 both have a restrictive meaning or the pre-2003 and post-2003 both have an expansive meaning. You can't have one and the other. The University submits the more proper interpretation would be both versions of the statute. The Board includes has a restrictive meaning. Now while the University believes that Section 7A plainly and unambiguously limits tenured system bargaining units to just tenured system faculty, the legislative history nevertheless dispels any remaining doubt regarding the section's proper meaning. Significantly, when you read and you analyze how the General Assembly went about modifying and changing the pre-2003 version of Section 7A into the current version of the last paragraph of Section 7A, one is struck by the fact that when they started modifying the language, they deleted the term non-tenured from the prior version of Section 7A. This is significant for the following reason. Assuming again the Board's interpretation is correct, assuming again that includes has an expansive meaning, such that it could allow certain groups, like non-tenured, to be included in the sole appropriate unit or not, why then, if includes has that expansive meaning, why then would the General Assembly have gone to the trouble of deleting the word non-tenured? The University would submit that if they had kept the word non-tenured, that would have been perfectly consistent with an expansive meaning or expansive reading of the term includes. The fact that the General Assembly went about deleting that phrase seems to suggest that they wanted it out of there. That they wanted to exclude non-tenured and other types of employee groups. Also, when you look beyond the actual structure of how they went about amending Section 7A, and you look at the actual floor debates from House Bill 1360, or Senate Bill 1360, I apologize, the key comment from those debates is Senator Maloney's comment in the second reading of the bill. In that second reading of the bill, Senator Maloney very clearly mentioned and stated the intent was to limit the sole appropriate unit to just tenured faculty, tenure and tenure track. Now, the union in its brief has suggested that that phrase is ambiguous, that if taken to its logical extreme, what Senator Maloney was actually suggesting was that there should only be one bargaining unit on each particular campus. In other words, there couldn't be a clerical unit or a maintenance unit. We would submit that if you read Senator Maloney's comment in relation to the language of the amendment that was being passed, it was clear that he was referencing that the sole appropriate unit for tenured and tenure track faculty would be limited to just tenured and tenure track personnel. The other various legislative comments, we believe, support rather than defeat the University's interpretation. For example, the union in its brief also mentioned several references to the word option. Senator Maloney mentioned several times in the third reading that faculty would have the option, the option of organizing on a campus-by-campus basis. We submit that that repeated reference to option meant A, they had the option to organize or not organize, and B, they had the option to organize on a campus-specific or a system-wide. There was no indication in the floor debates, no reference whatsoever to non-tenure. There is no reference and no suggestion that one of the options that the General Assembly was envisioning was the possibility of adding other types of employee groups to the sole appropriate tenured faculty unit. For example, non-tenured, maintenance, clerical, paraprofessionals, what have you. When you read it in context, there is no indication that that was the legislature's intent. Finally, when you look at one other point that the union had raised in its brief, was this reference to Sangamon State University. And the union in its brief suggests that the reference by Representative McKeon in the floor debates suggests that the intent of the legislature was to resurrect or recreate the Sangamon State bargaining unit, which as the union points out did at the time back in the early 90s contain tenured and non-tenured faculty. There is no indication though in Representative McKeon's statements that the intent was to recreate it person by person or position by position. Again, the references to Sangamon State were in generalities about allowing or bringing back collective bargaining in general to Sangamon State. Allowing a campus specific unit. There was no reference necessarily to recreating position by position that particular unit. Finally, in terms of the board's community of interest decision based on traditional community of interest factors. Again, this is an issue that you do not need to reach unless you find or disagree with the board's Section 7a analysis. But very briefly, your honors, the board's decision on that issue is clearly erroneous based on several factors. Number one, it's apparent from the board's opinion that they relied on one of their regulations that they had promulgated back in the early 1980s for the proposition that this particular unit that the union was petitioning for was presumptively appropriate. It's our position that relying on that regulation was clearly erroneous, that regulation was clearly voided by 1995 statute, which was inconsistent, or the regulation was inconsistent with that 1995 statute. And then, even if that 1995 statute didn't void it for all times afterward, the regulation is still on its face inconsistent with the plain language of the current reading of Section 7a. So, first of all, they should not have relied on that regulation or applied a presumption in any way. The other factors suggesting that the board's decision was clearly erroneous is the overemphasis on terms and conditions of employment that don't include a consideration of the disparity in wages and the disparity in job security between tenured and non-tenured faculty. In light of the potentials for conflicts of interest, in light of the fact that the importance that tenured faculty play vis-a-vis non-tenured faculty, and in light of the research mission of the UIC campus, it would be the university's position that that was clearly erroneous to focus on cases and case law involving smaller community colleges, school districts that do not have such an important research mission as UIC does. Again, one of the record facts indicating that last year alone they were estimated to have collected over $400 million in external research grants. Comparisons or analogies to community colleges and school districts are not warranted in this case. In conclusion, the respondent's interpretation of the last paragraph of Section 7a raises more questions than it answers. When read in its proper context, and when one also considers the legislative history, if you found the statute to be ambiguous, and when you consider the use of the term sole appropriate unit, it indicates that the General Assembly intended that a tenured system faculty bargaining unit must be limited to just tenured faculty. As such, the Court should reverse the Ed Board, Educational Labor Relations Board certification of the union, and remand the case to the Board for further proceedings. Thank you. Thank you, Counsel. The appellee. Good morning, Your Honors. I'm Sharon Purcell, Assistant Attorney General on behalf of the Illinois Educational Labor Relations Board. The Board respectfully requests that this Court affirm its decision that the language of Section 7a, in particular the provision that applies only to the University of Illinois, that it permits this petition for a bargaining unit of tenured track and non-tenured faculty at the University of Illinois Chicago campus, and then two, that this petition for a unit at the University of Illinois Chicago is an appropriate unit under Section 7a. This question is a very narrow question, obviously. It's a provision that applies only to the University of Illinois within Section 7a of the Act, and this particular issue applies only to the faculty at the University of Illinois Chicago, since that was who it was petitioned for. That was brought before the Board by the union when it filed its petition seeking to represent these particular faculty members, and then the Board, in a single unit, a single bargaining unit at Chicago, and then the Board did what it normally does when it gets a petition seeking representation. It looks at the language of the Act, what does the Act permit, and it looks at the petition. Here the Board looked at it, the language of the Act, it considered that the language was clear, that includes was not a limiting term in this case, and that the Act did actually three things, which was to permit bargaining units at each of the campuses rather than system-wide, as had been the case prior to 2004 when all the faculty, if they wanted representation, they would have been in one single bargaining unit. It also gives the tenure and tenure-track faculty the option to be included with the non-tenure or to have a separate bargaining unit, but that group of tenure and tenure-track are going to remain together regardless. It doesn't open up the options so wide that there's so many variations of what these bargaining units might be. It's still pretty constrained. It requires that the faculty in the colleges of the professional schools, medical, pharmacy, dentistry, law, veterinary medicine, each have their own unit. They would not be included in this bargaining unit. Actually, the language of the statute is consistent with the idea that you would have one unit that all of the tenure, non-tenure, and tenure-track could all be included in a single unit since the statute section 7A refers to, with regards to the professional colleges, each shall have their own unit without, again, containing any limiting language that you would expect to find if that were the case, that it was to be limited. The board's interpretation also recognizes the interest in, I mean, it's a reasonable interpretation. It recognizes the interest in avoiding proliferation of bargaining units. There's certain configurations. You can have tenure and tenure-track in one, but you wouldn't be splitting those apart. And that's going to be a plan across the university. And so you avoid, you widen out the options, but not so widely that there's a proliferation and fragmentation of employees. Secondly, it's a plausible interpretation because it furthers the purposes of the Act, which is, as Section 7 provides, to provide employees the fullest freedom in exercising the rights that are provided under the Act. So while respecting this provision of applying the fullest freedom, it also then looks at, well, what is required here for the University of Illinois, which is somewhat different than what is otherwise required for other educational institutions, educational employees, employers. So it's a reasonable interpretation that takes into account all of the typical considerations that have to be taken into account when they're looking at any petition that is seeking representation. So it's reasonable. It's based on the purposes of the Act, which, frankly, the university's interpretation doesn't address how that furthers the purposes of the Act or what that interest is. So if you have two separate, if you have differing interpretations, and you can see where one actually furthers the purposes of the Act, it's plausible, reasonable interpretation of the language. And if the board then applied the rules of statutory construction, includes, normally is, not a limiting term, and it gets Illinois case law, so it provides, it follows the statutes of construction and Illinois case law. With regard to the two cases cited by the university, federal court cases, those cases, neither of those cases, provided that stood for the proposition that the university would like to argue that they stand for, the courts in those cases reached their conclusion in each of those cases based on a different basis. And one, they just were not included, not to use that word, I probably should not use that word. But the list, it wasn't the question of whether they were ever included in the list. You had employees in one case, Adams, where they just certainly were not under the section of the statute that they wanted to bring a case under. They were under a different statute. So that list would never have applied to them anyway. So neither of those cases actually helped the university's argument that this is a limiting term in this case. You know, I want to impress on the court that, I mean, this is what the board does. I mean, it's got expertise in looking at the act and in deciding what it, considering what it means and how it applies to a group of employees coming before it with a petition for representation and then when a dispute comes up, it's the board's job to determine, you know, what does the act mean in this situation. So the board has expertise in this case, and that expertise is always going to be relevant. Pardon me for a minute, but we get a lot of appeals from all the labor boards in the state of Illinois, and as near as I can tell, they're all basically political appointees of the governor. I'm not certain why they're entitled to any special deference in terms of their interpretation of the act. The, what I know about the appointment of, the board members are you? Yeah. Are, the statute provides that they're to have, you know, Section 5 I believe of the act sets out that the qualifications that the members are to have, that they're to have a certain amount of expertise in educational matters and labor relations matters. So it must be, I mean, there's no reason to believe that the board members are not experts in their fields. They've been appointed, and that's the requirement for the appointment. And, you know, if the board's charged with making these decisions, that's the General Assembly set up this structure for, you know, how these decisions are to be arrived at. Has the board been required to use its expertise in this area? In which? Before this case? Before, with regard to this particular provision of Section 7A? No, this is the first petition that has come up before the board. So, but that's, I mean, that is what the board is there to do. Petitions are going to come to them, and that's always, will be the case, and always has been the case. And they're going to make that first call on what does this mean? And that's, of course, going to be based on, you know, what their experience is and what their expertise is and what they know that the rest of the Act does and provides. So within that context, they're going to make, you know, their decision on what the provisions of this Act actually means based on the plain language that is set out there in front of them. Thank you. Your time has expired. Thank you. In closing, I would ask that you affirm, if not, as we said in our brief, if you believe that the Court has made reversible error, that it should be remanded to the board to make a determination under its rules on the two bargaining units. Thank you. Good morning. Margaret Angelucci on behalf of UIC United Faculty. I would like to address a few issues raised by the University's Council, beginning with legislative history. What I think the Court should consider is both what was said during both the Senate and the House debates and what was not said. The University focuses in on one statement by Senator Maloney, but the theme throughout both the House and Senate debates was about providing faculty options. The University argues that those options are specifically limited to whether they should bargain or organize or not, and that's simply not the case. The statement by Representative McCann during the House debates specifically talked about giving the faculty at U of I the option of selecting a bargaining unit of their choice. Senator Maloney also talked about reconstituting the bargaining unit at Sangamon State. He specifically stated it offers them the option to form that collective bargaining unit. Now, we're in agreement that the collective bargaining unit that was previously at Sangamon State had both non-tenure and tenure faculty. So he specifically makes reference to that mixed unit, and it specifically makes reference to giving them the option to put that unit back together. So when you're looking at the legislative history, you have to look at it in the entire context of all the statements. And what the University is asking you to do is to look nearly at one statement taken out of context to establish or to argue that the board's consideration of finding that the unit was appropriate was improper. We also think that what the University is asking you to do is to do something that the legislature has never done. The legislature has never dictated to public employees of this state what unit they have to be in. They've never said, this is the unit, take it or leave it. Now, they certainly have put restrictions on the type of employees that can be in a unit. And specifically, in just a few sentences above the language that we're arguing about here, the legislature said professional and non-professional employees cannot be in a mixed unit unless they both agree to be in that combined unit. So the legislature clearly knew how to put limits on mixing units. They didn't do so here. And to adopt the University's argument would be the first time in this state's history where the legislature has said, you have one unit and one unit only if you don't like it too bad. And that's certainly not something the legislature has ever done. It certainly is contrary. It's the antithesis of the Ed Act here, which has been passed to provide employees the fullest freedoms under the Act. And this is a very narrow and limiting reading of the statute. Do you think the statute is ambiguous? We believe it's clear. Do you think it's poorly drafted? I do think that it could have been drafted better. So being poorly drafted so that it permits different interpretations isn't the same thing as being ambiguous? No, no. I think that when they started with the statutory language, I think what they were doing was working from what they had that was existing. And so I think through the legislative process, instead of drafting entirely new language, it may have been easier for the legislature to cut and paste rather than to redraft the entire thing. And so I think that that's where it starts with. And also, the university makes the argument that the pre-2003 Act, that the union has argued that it's limiting. That's not what we argued. What we argued was in pre-2003 legislation, non-tenure track faculty had to be included with tenure and tenure track. The deletion of the reference to non-tenure, basically what it does is non-tenure, they don't need to be in the bargaining unit, but that doesn't mean they can't be. We believe that the legislation made it easier to organize by saying, you don't have to have all of these employees, you have to have tenure and tenure track, but that is taking a giant leap to say nobody else can be in the bargaining unit. Council for the university also made a statement that the union's taken the position that absolutely anybody can be in this bargaining unit. That's not the position we took. Actually, Section 7 specifically states that the unit has to be comprised of non-supervisory academic faculty. Clearly, we're not taking a position that a maintenance employee would fit the definition of academic faculty. So we are saying that individuals other than tenure, non-tenure, or tenure track faculty can be included, but they still have to fit within the definition of non-supervisory academic working more than half time. That's specifically in Section 7. In addition, the university has taken issue with the board's reliance on the rules and regulations. I think the argument is a red herring, because whether or not they found that it was a presumptively appropriate unit, they nevertheless went through a very thorough analysis of all of the community of interest factors, and they said even if it wasn't a presumptively appropriate unit, we still would have found it appropriate based on all of these factors. In getting into community of interest, the university makes the argument that there is no community of interest, despite the fact that they took a diametrically opposed position in 1995. In 1995, in litigation in the federal courts, the university took the position that, quote, and I'm quoting, the quality of education is best served by treating faculty as a single unit for collective bargaining purposes, and further stated that the faculty would be much better off in a unified group. Now they've tried to distance themselves from that previous position by arguing we were just trying to interpret the act as written. But these are factual statements. This isn't a legal interpretation. And nothing has changed from 1995 to the present that would support the university's position that there no longer is a community of interest. In this case, when you look at it, there are really few discernible differences between non-tenure and tenure-track faculty. The university doesn't dispute that they teach the same classes, they have the same education, same supervision, same hours, they have the same due process rights, they have the same promotion and evaluation process. So the university's argument on community of interest is based on this esoteric argument that there's an inherent conflict of interest that really isn't very identifiable or hasn't been well-identified by the university. One of the arguments that they make is that non-tenure-track faculty support tenure-track, and that somehow distracts from or detracts from defining a community of interest. If you look at it, and there's plenty of cases on it, when one job title supports another, that's a factor in support of defining a community of interest because it shows functional integration. In addition, they've argued that there's no community of interest or there's a conflict of interest because non-tenure-track faculty have to be invited to be on faculty governance committees while tenure-track faculty have an automatic right. Whether or not that's true, and we dispute the accuracy of that statement, there is no dispute that since at least 1972, so for over 40 years, non-tenure-track faculty and tenure-track faculty have sat jointly on all of these faculty governance committees setting policies department-wide, college- and university-wide policies. The university also has taken issue with the fact that the board didn't give proper consideration to other public universities in Illinois, their bargaining units. But none of those cases was there a dispute about the appropriateness of the bargaining units. We have cited on pages 39 through 40 over a dozen cases where mixed units of tenure and non-tenure faculty at the university level have been found to be appropriate. And in fact, in all of the cases considered by this court and by the board where tenure status was raised, the board and the courts have found that tenure status is not determinative. The employer has also argued about the desires of the employees. They argue that this petition is really the union's petition and had nothing to do with the employees. Well, the ALJ and the board both found that the majority interest petition in this case was accompanied by sufficient showing of interest from the employees in the petition for unit. So that clearly has been found. The employer didn't raise it at the ALJ level and has waived any argument on that issue. The other thing that I wanted to jump back to very quickly, Your Honors, is the university, when interpreting Section 7, they're asking you to read the word only into that legislation. They want you to read, includes only tenure and tenure track. And if you have to mentally infer the word only into that legislation, it's not a proper interpretation. We respectively request that the board's decision in this case, interpreting Section 7, as well as the interpretation of Section 7 that the unit is appropriate, as well as finding that the petitioner's satisfied community of interest analysis be upheld and the unit be certified for bargaining. Thank you. Mr. Fowers, rebuttal. Four brief points. Number one, the board has suggested that their interpretation of the statute is reasonable. We would respectfully submit that that is not the standard for statutory interpretation. They are not entitled to any site type of deference because their interpretation is reasonable. It's correct or incorrect. Number two, there was some suggestion by the union that this is the first time, if our interpretation is correct, the university's interpretation, this would be the first time that the General Assembly has ever limited a bargaining unit in such a way. We would suggest and remind the court that prior to 2003, the last paragraph of Section 7A did just that. It had a system-wide faculty bargaining unit requirement. So this is not the first time that the General Assembly has done this. And number three, the union has just suggested that the absence of the word only in that last paragraph of Section 7A suggests that you should not read a limiting interpretation into the word includes. University submits that effectively, essentially, the word only does appear in that first sentence of the last paragraph. Again, sole appropriate unit. Sole basically means only. You can rephrase it and say the only appropriate unit for tenured and tenure-track faculty includes, and you go on. So the university's position is only, is essentially in that last sentence. And finally, in response to the board's position that the university's the university would submit that one of the other goals of the act is to promote labor relations stability. And again, it appears that the General Assembly, based on the agreement of the parties, because if you read that legislative history, it's clear that there were several references made that the parent organization for the union, the IFT, and the university had agreed to this bill language. Based on that agreement and based on the General Assembly's wording of tenured and tenure-track faculty, it would be the university's position that this does foster and promote one of the goals of the statute, which is to promote labor relations stability to avoid collective bargaining conflicts between tenured and non-tenured faculty. Thank you. Thank you, counsel. We'll take this matter under advisement and stand in recess until the readiness of the next case.